**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| PERFORMANCE LIVESTOCK ANALYTICS 2.0, INC., | ) ) ) | Case No. 25-cv-2049 |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| REDBOOK SOFTWARE, INC., | ) ) | **JURY DEMANDED** |
| Defendant. | ) ) | |

COMES NOW, Plaintiff Performance Livestock Analytics, 2.0 Inc., by and through the undersigned counsel, and in support of its claims against Defendant Redbook Software, Inc., pleads as follows:

## I.      NATURE OF THE ACTION

1.      This action results from Redbook Software, Inc.'s ("Redbook") violation of Performance Livestock Analytics, 2.0 Inc.'s ("PLA") intellectual property and other rights when Redbook infringed on PLA's trade dress, infringed on PLA's patented software, used PLA's confidential and proprietary business information to market a copycat software product, accessed PLA's product without authorization, interfered with PLA's customer relationships, and used PLA's compiled confidential customer information retained by PLA's former employees.

2.      This is an action for violation of trade dress protection under the Lanham Act, interference with existing contractual and business relations, unjust enrichment, and patent infringement under federal patent law, seeking to prevent and permanently enjoin Redbook from illegally infringing and profiting from PLA's trade dress and United States Patent No. US 9,924,700 (the "'700 Patent") and to recover damages, attorneys' fees, and costs.

## II.    PARTIES

3.    Plaintiff PLA is a corporation organized under the laws of the State of Delaware, with its primary place of business in St. Ansgar, Iowa.

4.    Upon information and belief, Defendant Redbook is a corporation organized in August 2024 under the laws of the State of Delaware with its primary place of business in Denver, Colorado.

## III.    JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 because PLA brings a claim under the Lanham Act, 15 U.S.C. § 1125 *et seq.*, and the Court has jurisdiction under 28 U.S.C. § 1338(a) because PLA brings a claim under federal Patent Law, 35 U.S.C. § 1, *et seq.*

6.    This Court has supplemental jurisdiction over PLA's state law claims and claims under federal Patent Law, 35 U.S.C. § 1, *et seq.* pursuant to 28 U.S.C. § 1367(a), as all the claims arise from the same set of operative facts.

7.    Redbook is subject to this Court's specific and/or general personal jurisdiction because (i) at least a portion of the infringements or other illegal activity alleged herein occurred in the forum; and (ii) Redbook regularly does or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from goods and services provided to individuals in this forum state and in this Judicial District.

8.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to PLA's Lanham Act claim occurred in this judicial district, all claims arise out of the same nucleus of operative facts as PLA's Lanham Act claim, and because this Court has personal jurisdiction over Redbook.

9.      The Court should exercise pendent venue over Redbook.

## IV.    FACTUAL ALLEGATIONS

### A.      The Creation and Growth of PLA and Performance Beef

10.     PLA is a technology company within the livestock space, specifically in the beef cattle industry.

11.     PLA's predecessor in interest, Performance Livestock Analytics, Inc., was started by its Chief Executive Officer Dane Kuper and its Chief Operating Officer Dustin Balsley after they discovered a lack of useful technology in the beef cattle industry.

12.     Both Kuper and Balsley came from farming backgrounds, and they collaborated with a co-founder Thomas Blair who was a Silicon Valley software developer.

13.     On July 8, 2015, Kuper, Balsley, and Blair created and began operating PLA, which had its home office in St. Ansgar, Iowa.

14.     The three set out to create a novel platform that would collect critical data related to cattle feeding operations and that would be accessible from anywhere, at any time; their efforts resulted in the creation, launch, and scale of PLA's application, Performance Beef.

15.     Kuper, Balsley, Blair, and PLA's software engineers operated prototypes of Performance Beef in 2016, and they first sold the product in the market on January 17, 2017.

16.     Over time, PLA's software engineers have worked to continually update and improve Performance Beef.

17.     Performance Beef collects information related to feeding and costs based on historical and real time data in a single interface. This innovative livestock tracking application helps cattle feeders track the health of their cattle, accurately track market prices, and give up-to-date information about the status of any particular set of cattle.

18.     Performance Beef simplifies the process of recording livestock data in real time from the pen, the pasture, or the chute (the device in which an animal is weighed), resulting in accurate data collected in a single interface and available at a feeder's fingertips.

19.     The Performance Beef application is enabled by electronic ear tags and a scale head that automatically shows an animal's current health data and the animal's health history when the animal enters the chute.

20.     The Performance Beef application also allows users to capture treatments, performance, and costs while processing cattle, thereby streamlining the data entry process for cattle feeding operations.

21.     When used with a POINT® scale indicator (by third party Scale Tec), Performance Beef tracks every pound of feed ingredients loaded and delivered to the cattle, which results in fewer feed overages and underages and allows for optimum profits.

22.     The Performance Beef application's functionality on mobile devices like smartphones or iPads allows for easy access, and the application is capable of integrating with existing feed and financial information, keeping everything in one place, accessible from anywhere.

**B.      The Stock Sale to and from Zoetis Holdings LLC**

23.     In April 2020, the owners of Performance Livestock Analytics, Inc. sold their stock to Zoetis Holdings, LLC ("Zoetis").

24.     On July 5, 2023, Zoetis sold its stock through a stock purchase agreement to PLA, which had assumed via assignment the intellectual property rights of Performance Livestock Analytics, Inc.

25.     On July 5, 2023, the intellectual property rights were assigned back to PLA.

### C.    PLA and Zoetis Employees

26.    PLA hired Emma Coffman as a salesperson on September 9, 2019, and she worked for PLA and then its successor, Zoetis, through about July 5, 2023. While employed with PLA, Coffman was a Sales Representative who was assigned to a sales territory that spanned the United States.

27.    PLA hired Callie Greiner as Regional Sales Representative assigned to make sales in Texas, and she worked for PLA or Zoetis through about July 5, 2023.

28.    During the course of their employment with PLA, Greiner and Coffman were exposed to PLA's confidential and proprietary information, including its patent information and trade secrets, which PLA had compiled and used since at least 2016 when it first submitted its application for the '700 Patent, described below.

29.    Bjorn Gott was a software engineer who worked for PLA and Zoetis through about to July 5, 2023.

30.    Aaron Burbach was a software engineer who worked for Zoetis through July 5, 2023.

31.    Both Gott and Burbach were intimately involved with developing the Performance Beef software over the seven years between the time PLA applied for the '700 Patent in 2016 and the time Zoetis sold the stock back to PLA on July 5, 2023.

32.    During that period, Gott, Burbach, and other PLA employees continually modified and improved the Performance Beef product in response to consumer feedback and technology advances.

33.     Upon information and belief, immediately following the July 5, 2023 stock sale, Zoetis terminated the employment of all individuals who had been working for Zoetis at the time, including Burback, Coffman, Greiner, and Gott.

34.     Upon information and belief, Greiner and Coffman both began working for Redbook—PLA's direct competitor, shortly after July 5, 2023.

35.     Upon information and belief, at and after their termination from Zoetis, Greiner and Coffman retained PLA's compiled confidential customer lists, including customer contact information and details regarding customer contracts and subscriptions, and they began using PLA's confidential information to benefit themselves and their new employer, Redbook.

36.     Upon information and belief, on November 9, 2023, Redbook representatives contacted former PLA/Zoetis software engineer Burbach and solicited him to share PLA's confidential, proprietary, and trade secret information with Redbook through proposed employment with Redbook.

37.     Redbook's founder, Jack Ruppert, messaged former PLA/Zoetis software engineer Gott and solicited his help to build "feed software similar to PLA" despite Gott's confidentiality obligations to PLA:



**D.    PLA's Patented Technology — Performance Beef**

38.     PLA's predecessor in interest developed the first prototype of Performance Beef in 2016, and it wrote and obtained the '700 Patent.

39.    More specifically, on December 1, 2016, the inventors filed with the United States Patent and Trademark Office (USPTO), provisional patent application number 62/428,959, entitled *Asynchronous Capture, Processing and Adaptability of Real-Time Feeder Livestock Ration Weight Information and Transfer Over Wireless Connection for Mobile Device and Application Processing* ("the Provisional Application").

40.    On November 30, 2017, PLA's predecessor, filed with the USPTO, non-provisional patent application number 15/828,109 claiming priority to the Provisional Application entitled *Asynchronous Capture, Processing, and Adaptability of Real-Time Feeder Livestock Ration Weight Information and Transfer Over Wireless Connection for Mobile Device, Machine-to-Machine Supply Chain Control, and Application Processing*, which on March 27, 2018 matured into the '700 Patent. ***See Attached, Exhibit 1 (Patent).***

41.    PLA received from its predecessor an assignment of all right, title, and interest, including the right to enforce, the '700 Patent.

42.    Since March 27, 2018, PLA, directly or through its predecessor in interest, has been the owner of the entire right, title, and interest in the '700 Patent.

43.    The '700 Patent claims a method and system in a framework and workflow for assisting in livestock feeding operations by tracking and weighing ingredients from an electronic scale. The framework and workflow captures, transfers, stores and processes parameters for cattle feeder ration and weight data collection. The method and system includes collecting data related to feed ration components and broadcasting that information over a wireless radio connection (like a Bluetooth device) to a mobile application ("application").

44.     In other words, the '700 Patent's patented technology is a methodology embodied in an application that communicates wirelessly with a scale to help users determine the appropriate recipe for livestock feed based on the real-time condition of the user's livestock.

45.     Claim 9 of the '700 Patent covers a method for setting up feed mixing according to one or more work orders. In a similar manner, the scale weighs each ingredient and the total ration, a Bluetooth device sends the weight of each component of the ration wirelessly to a mobile application for a real-time display to the operator.

46.     Attached here as *Exhibit 2* and incorporated herein by this explicit reference is a Claims Chart, which describes Claim 9 of the '700 Patent in detail, includes a description of the claim, and shows how the Redbook Cattle Product, described below, deliberately infringes. *See Attached, Exhibit 2 (Claims Chart).*

**E.     Redbook's Redbook Cattle Product which resulted, in part, from its Founder's Unauthorized Access to Performance Beef**

47.     Defendant Redbook makes, uses, offers to sell, and/or sells within the United States a product called "Redbook Cattle" (the "Accused Product").

48.     Upon information and belief, it began selling the Accused Product in March 2024.

49.     Upon information and belief, Redbook's founder, Jack Ruppert, reverse-engineered the Performance Beef product to create the Accused Product due, in part, to obtaining unauthorized access to a PLA customer's Performance Beef account.

50.     PLA's Customer Service Agreement (at performancebeef.com/privacy.html) prohibits monitoring or reverse-engineering Performance Beef for competitive purposes. *See Exhibit 3 (PLA Customer Service Agreement*, at pp.1–2, § 2.1*).*

51.     Redbook's founder, Jack Ruppert, accessed PLA's software through multiple PLA customer account using the email jack@redbookcattle.com.

52.     PLA's server logs show multiple unauthorized logins to Performance Beef from Ruppert's email in September 2023 through individual PLA customer accounts, including customers Jake Perino (of Deer Grove, Illinois), Derek Pohl (of Dorchester, Nebraska), and Doug Korth (of Randolph, Nebraska).

53.     Redbook advertises the Accused Product online and through interstate commerce on its website (www.redbookcattle.com), the Apple Store, and on social media platforms like X (formerly Twitter), Facebook, and TikTok.

54.     Redbook advertises the Accused Product as a cattle management platform that tracks cattle movements and health, checks weights, centralizes inventory reporting, and streamlines the feeding process by collecting data in a single interface.

55.     Stated differently, the Accused Product does the same thing as Performance Beef.

56.     The Accused Product is a copycat or near replica of the Performance Beef product. It performs the same functions in the same industry and it looks nearly identical to PLA's product.

57.    Performance Beef's interface looks like this:



58.    Redbook's Accused Product mirrors Performance Beef by using the same grid-like interface formation, the same color scheme, and the same overall look:



59.    Another comparison shows the Performance Beef product in the first image below

and the Accused Product in the second image below:



60.    Both Performance Beef and Redbook Cattle employ a grid based layout to organize the components of the feed ration along the bottom with both the "Target" or "Called" amount of the ingredient in the top number and the "Loaded" amount displayed at the bottom number.  When an ingredient for the ration is selected, that ingredient is highlighted with the "Target" or "Called" for amount displayed in the large right-hand column.  The total weight of the load is displayed in the left-hand column. Both systems employ a color-coded dynamic feedback display.  As the selected ingredient is loaded into the mixer, the "Target" or "Called" for amount begins with a green-colored display and with the value decreasing.  As the "Target" or "Called" for amount approaches zero, the display turns yellow,  with the display turning red as the "Target" or "Called" for amount meets or exceeds the target.  The operator then selects the next ingredient in the feed ration, repeating the process until all of the ingredients are loaded with the total weight of the load displayed in the left-hand portion of the screen.

61.    The Accused Product's interface employs an identical grid-based layout to organize feed component data, borrowing Performance Beef's tested presentation of information.

62.    Both interfaces utilize a color-coded system for feed types and ingredient selection.

a.    Both interfaces utilize highlighted or colored boxes that visually distinguish different feed types.

b.    When a user of either interface selects an ingredient from the small boxes on the bottom of the screen, each product employs green highlighting to indicate selected ingredients.

63. Likewise, both systems prominently display weight values for individual feed components side-by-side. As feed inputs load onto the scale, the large boxes in the middle of the screen show the target feed weight and the loaded weights for each ingredients.

64. Both interfaces include large, dynamically changing, color-coded panels to differentiate types of information with colors dramatically adjusting from green, to yellow, to red as the loaded weight of an ingredient approaches its target.

65. Redbook's Accused Product has the same layout of key elements as Performance Beef, including the Ingredient Called Weight, dynamic feedback mechanisms, Total Scale Weight, and ingredient selection sections.

66. The Accused Product copies the control mechanisms of the Performance Beef product in the following ways:

a. Both interfaces feature a "zero" button for scale calibration which is located adjacent to the Total Scale Weight display.

b. Both systems include a "distribute" button which is positioned alongside the Total Scale Weight section.

c. Both interfaces provide multiple feed selection options which are positioned uniformly below the Ingredient Called Weight section and the Total Scale Weight section.

d. Both systems incorporate a "lock" feature on the Ingredient Called Weight section.

67. The Accused Product utilizes Scale-Tec's POINT® scale indicator, which is the exact third-party scale indicator which PLA chose to couple with its Performance Beef product years ago.

**F.      The former PLA/Zoetis Employees' Redbook sales to PLA customers**

68.      After its formation in 2024, Redbook began selling devices and software licenses for the Accused Product to companies and individuals that previously bought Performance Beef products and licenses from PLA.

69.      Many of the new Redbook customers were previously PLA customers in Coffman's and Greiner's assigned sales territories.

70.      PLA customers in Iowa, including Pig Hill Company (of Alvord, Iowa, in the Northern District of Iowa) and Jordan Morris (of Libertyville, Iowa, in the Southern District of Iowa) had Performance Beef subscriptions and have switched to the Redbook product.

71.      Upon information and belief, each of the PLA customers who supplied their login information to allow Redbook's founder, Jack Ruppert, to access their accounts without appropriate authorization have ended their PLA subscriptions and now are Redbook customers, including: Jake Perino (of Deer Grove, Illinois), Derek Pohl (of Dorchester, Nebraska), and Doug Korth (of Randolph, Nebraska).

72.      Upon information and belief, Coffman used PLA's confidential data to solicit at least four PLA customers in her prior PLA sales territory of Texas and converted those customers to the copycat Redbook Accused Product.

73.      PLA customers in Texas who ended their Performance Beef subscriptions and switched to Redbook's product include Ronald Feller, Julie Free, Whit Whitaker, and Julia Winders.

74.      Upon information and belief, Mr. Whitaker is now a Redbook shareholder.

75.     Upon information and belief, all of these customers were targeted and solicited by Redbook and have now switched over to being Redbook customers who purchased devices and licenses for the Accused Product, rather than continuing their subscriptions with PLA.

**G.     Notice of the '700 Patent**

76.     On April 8, 2025, PLA's counsel sent Redbook a Notice of Infringement and demand to cease and desist. Thus, Redbook was aware by at least April 8, 2025, of the existence of the '700 Patent and that the Accused Product infringed on PLA's '700 Patent.

77.     By at least April 8, 2025, Redbook was aware and that at least some of Redbooks' activities and/or the activities of its customers infringe the '700 Patent.

## COUNT I – TRADE DRESS INFRINGEMENT
## IN VIOLATION OF THE LANHAM ACT
## 15 U.S.C. § 1125, et seq.

78.     PLA restates and incorporates the allegations contained in Paragraphs 1–77 as if fully set forth herein.

79.     From the time Performance Beef went live on January 17, 2017, and continuing without interruption at all times pertinent to this action up to and including the present date, Performance Beef has used a trade dress design interface consisting of a user interface that encompasses grids and a color changing scheme of green, yellow, and red.

80.     The look and feel of Performance Beef's application design and interface is inherently distinctive or, alternatively, has acquired secondary meaning in the marketplace from more than five years of continuous use.

81.     PLA has invested considerable resources in developing its trade dress design and in promoting its products by use of this design.

82.    Significant segments of consumers likely to purchase Performance Beef identify this trade dress with Performance Beef and PLA.

83.    The function of Performance Beef's trade dress design is to identify PLA as the source of the Performance Beef and establish a symbol of quality and goodwill that consumers can trust.

84.    The trade dress has no other functionality.

85.    Commencing on or about March 2024 and continuing to the present, Defendant has been selling the Accused Product (Redbook Cattle) by use of an interface with a trade dress consisting of a user interface that encompasses grids and a color changing scheme of green, yellow, and red, that is in all material respects confusingly similar to Performance Beef's trade dress.

86.    Defendant willfully, maliciously, and intentionally copied PLA's trade dress design in order unfairly to appropriate PLA's established goodwill and divert PLA's customers by means of deception as to the source of Redbook's Redbook Cattle product.

87.    As a result of Defendant's use of a trade dress design that is nearly identical to PLA's, a significant number of customers are likely to be confused as to the source of the products/services they purchase.

88.    Also as a result of Defendant's use of a confusingly similar trade dress design, PLA has suffered injury in terms of diverted sales and diminution of the selling power of its established trade dress.

89.    Defendant's continuing infringement of PLA's trade dress is likely to cause PLA irreparable harm by continuing to divert sales and damaging PLA's business reputation and the reputation of PLA's product.

WHEREFORE, PLA requests that this Court

    a.   Enter judgment that Redbook infringed on PLA's protectable trade dress;

    b.   Permanently enjoin Defendant, its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for Defendant or on its behalf, or acting in concert or privity with Defendant, from any further use of PLA's trade dress;

    c.   Find that Redbook willfully intended to trade on recognition of PLA's trade dress;

    d.   Order that PLA be allowed to recover Redbook's profits under 15 U.S.C. § 1117(a);

    e.   Award PLA money damages under 15 U.S.C. § 1117(a);

    f.   Award PLA treble damages under 15 U.S.C. § 1117(a);

    g.   Assess the costs of litigation to Redbook under 15 U.S.C. § 1117(a);

    h.   Award PLA attorneys' fees under 15 U.S.C. § 1117(a);

    i.   Order the destruction of anything that uses the infringing trade dress under 15 U.S.C. § 1118; and

    j.   Order any other relief the Court deems just and necessary.

## COUNT II – DIRECT PATENT INFRINGEMENT
## 35 U.S.C. § 271

90.    PLA restates the allegations contained in Paragraphs 1–89 as if fully set forth herein.

---

91.    Upon information and belief, Redbook's product, Redbook Cattle, directly infringed, and continues to directly infringe, by performing each element of the '700 Patent's claim 9, and by making, using, selling, and/or offering to sell within the United States their product using the infringing method, either literally or under the doctrine of equivalents. Attached Exhibit 2 (Claims Chart) includes a claim chart illustrating how the Accused Product infringes claim 9 of the '700 Patent.

92.    As set out in Exhibit 2 (Claims Chart), Redbook Cattle's use of the infringing method is a material part of the infringing product and has no non-infringing use.

93.    Redbook's actions complained of here constitute direct infringement of the '700 Patent in violation of 35 U.S.C. § 271 *et seq.*

94.    Redbook's infringement of the '700 Patent has injured and will continue to injure PLA and PLA is entitled to recover damages adequate to compensate it for such infringement.

95.    As a direct and proximate consequence of the infringement, PLA has suffered irreparable harm, and PLA will continue to suffer irreparable harm in the future unless Redbook is enjoined from infringing the '700 Patent.

96.    Redbook's infringement of the '700 Patent has injured and will continue to injure PLA unless and until this Court enters an injunction prohibiting further infringement and enjoining further manufacture, use, importation, offers for sale, and sale of Redbook's infringing product(s) that fall within the scope of any of the claims of the '700 Patent.

97.    Redbook's acts of infringement have been knowing and willful and with actual knowledge of the '700 Patent and its infringement thereof. Upon information and belief, Redbook's continued infringement of the '700 Patent is willful.

WHEREFORE, PLA requests that this Court

    a.  Enter judgment that Defendant has infringed the '700 Patent;

    b.  Permanently enjoin Defendant, its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for Defendant or on its behalf, or acting in concert or privity with Defendant, from continuing to infringe the '700 Patent;

    c.  Award PLA compensatory damages under 35 U.S.C. § 284;

    d.  Enter judgment requiring Redbook to pay damages under 35 U.S.C. § 284 for the infringement of the '700 Patent, including treble damages, PLA's costs, and pre-judgment and post-judgment interest;

    e.  Find that this is an exceptional case under 35 U.S.C. § 285 and award PLA their reasonable attorneys' fees;

    f.  Find that Redbook's infringement of the '700 Patent has been and is now willful, deliberate, and objectively reckless; and

    g.  Award PLA such other relief as the Court deems just and necessary.

## COUNT III – INDUCED/INDIRECT PATENT INFRINGEMENT
## 35 U.S.C. § 271

98.    PLA restates the allegations contained in Paragraphs 1–97 as if fully set forth herein.

99.    Redbook makes, uses, sells, and/or offers for sale the Accused Product to and for customers with the intent and direction that customers use the Accused Product in a way that directly infringes at least claim and 9 of PLA's '700 Patent.

100.    Upon information and belief, Redbook's customers who use the Accused Product in accordance with Redbook's instructions directly infringe one or more claims of the '700 Patent in the United States, including at least claim 9, in violation of 35 U.S.C. § 271.

101.    Upon information and belief, Redbook indirectly infringes, at least as of the date of filing this Complaint, one or more claims of the '700 Patent in the United States, including at least claim 9, by causing others to use, offer for sale, sell and/or import the Accused Product, which it knows embodies the inventions of and is within the scope of one or more claims of the '700 Patent.

102.    As of at least April 8, 2025, and by no later than the filing date of this Complaint, Redbook's affirmative acts as described above were and continue to be made with knowledge that its customers' use of the Accused Product constitutes infringement of the '700 Patent.

103.    Redbook's actions have and continue to constitute active inducement of infringement of the '700 Patent, including at least claim 9, under 35 U.S.C. § 271(b).

104.    Redbook's acts of induced infringement have been and continue to be willful.

WHEREFORE, PLA requests that this Court

    a.  Enter judgment that Defendant has indirectly infringed or induced infringement of the '700 Patent;

    b.  Permanently enjoin Defendant, its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for Defendant or on its behalf, or acting in concert or privity with Defendant, from continuing to infringe the '700 Patent;

    c.  Award PLA compensatory damages under 35 U.S.C. § 284;

d.  Enter judgment requiring Redbook to pay damages under 35 U.S.C. § 284 for the infringement of the '700 Patent, including treble damages, PLA's costs, and pre-judgment and post-judgment interest;

e.  Find that this is an exceptional case under 35 U.S.C. § 285 and award PLA their reasonable attorneys' fees;

f.  Find that Redbook's infringement of the '700 Patent has been and is now willful, deliberate, and objectively reckless; and

g.  Award PLA such other relief as the Court deems just and necessary.

## COUNT IV – CONTRIBUTORY PATENT INFRINGEMENT
## 35 U.S.C. § 271

105.  PLA restates the allegations contained in Paragraphs 1–104 as if fully set forth herein.

106.  The Accused Product, Redbook Cattle, is or contains a component of the technology and/or methodology encompassed by the '700 Patent.

107.  Redbook makes, uses, sells, and/or offers for sale the Accused Product to and for customers knowing that the Accused Product is especially made or especially adapted to perform in a way that directly infringes at least claim 9 of the '700 Patent.

108.  The infringing component used in the Accused Product is a material part of the infringing product, and is not a staple article or commodity suitable for any non-infringing use.

109.  Redbook's actions have and continue to constitute contributory infringement of the '700 Patent under 35 U.S.C. § 271(c).

110.  Redbook's acts of contributory infringement have been and continue to be willful.

WHEREFORE, PLA requests that this Court

a.   Enter judgment that Defendant has contributorily infringed the '700 Patent;

b.   Permanently enjoin Defendant, its affiliates, subsidiaries, officers, directors, employees, agents, representatives, licensees, successors, assigns, and all those acting for Defendant or on its behalf, or acting in concert or privity with Defendant, from continuing to infringe the '700 Patent;

c.   Award PLA compensatory damages under 35 U.S.C. § 284;

d.   Enter judgment requiring Redbook to pay damages under 35 U.S.C. § 284 for the infringement of the '700 Patent, including treble damages, PLA's costs, and pre-judgment and post-judgment interest;

e.   Find that this is an exceptional case under 35 U.S.C. § 285 and award PLA their reasonable attorneys' fees;

f.   Find that Redbook's infringement of the '700 Patent has been and is now willful, deliberate, and objectively reckless; and

g.   Award PLA such other relief as the Court deems just and necessary.

## COUNT V – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL OR BUSINESS RELATIONSHIPS WITH CUSTOMERS

111.   PLA restates and incorporates the allegations contained in Paragraphs 1–110 as if fully set forth herein.

112.   PLA has existing service agreements and business relationships with its customers and, by way of the former PLA/Zoetis sales employees, Redbook was aware of these contracts and business relationships, including contact information for the customers.

113.    Defendant Redbook intentionally and improperly interfered with PLA's contracts and business relationships with its customers exploiting information it received from the former PLA/Zoetis sales employees and through Redbook founder Jack Ruppert's unauthorized access of the Performance Beef system, to solicit PLA's customers' business, thus interfering with the performance of these contracts and business relationships and making performance more burdensome or expensive.

114.    Redbook relied on the confidential customer information it received from the former PLA/Zoetis sales employees and on the technical information it wrongly acquired through its founder's unauthorized access to the Performance Beef system to tortiously interfere with PLA's contracts and business relationships with customers. As a result of Defendant Redbook's wrongful conduct, PLA has lost business from existing customers, including customers in the Northern District of Iowa, to Redbook.

115.    As a direct and proximate result of Redbook's tortious interference with PLA's contracts with its customers, PLA has incurred and will continue to incur monetary damages in an amount to be determined at trial, but no less than $75,000.

WHEREFORE, PLA requests that this Court

    a.  Award PLA damages for pecuniary loss of the benefits of the contracts;

    b.  Award PLA consequential losses for which the interference is a legal cause;

    c.  Award PLA damages for actual harm to reputation resulting from the interference;

    d.  Award PLA punitive damages; and

    e.  Award any other relief the Court deems just and necessary.

## COUNT VI – UNJUST ENRICHMENT

116.    PLA restates the allegations contained in Paragraphs 1–115 as if fully set forth herein.

117.    Redbook devised a scheme to create a copycat product by accessing a PLA customer's Performance Beef system without authorization and in violation of the customer's obligations under the service agreement with PLA, using PLA's compiled confidential customer information it obtained by hiring the former PLA/Zoetis sales employees, and interfering with PLA's contracts and business relationships with customers.

118.    Redbook was unjustly enriched by the benefit of its creation of the copycat product, its interference with PLA's customer contracts and business relationships, the use of PLA's confidential customer information, and other wrongful conduct described herein.

119.    It is unjust to allow Redbook to retain the benefits of its wrongful conduct under the circumstances.

120.    Because of Redbook's unjust enrichment, PLA has suffered and will continue to suffer damages, and PLA is entitled to compensation for the same including, but not limited to, the monetary or other benefits of the wrongful conduct by Redbook.

WHEREFORE, PLA requests that this Court enter an award in PLA's favor in the amount of the value of Redbooks' inequitable benefit, and for any other relief the Court deems just and necessary.

## JURY DEMAND

Plaintiff PLA demands a trial by jury for all issues so triable.


*/s/ Teresa B. Morio*

| | |
|---|---|
| TERESA B. MORIO | AT0000755 |
| JASON R. SYTSMA | AT0009728 |
| MOLLY M. PARKER | AT0012335 |

for

SHUTTLEWORTH & INGERSOLL, P.L.C.
235 6th Street SE
P. O. Box 2107
Cedar Rapids, Iowa  52406-2107
 (319) 365-9461 Phone
 (319) 365-8564 Fax
tbm@shuttleworthlaw.com
jrs@shuttleworthlaw.com
mmp@shuttleworthlaw.com

***Attorneys for Plaintiff***
***Performance Livestock Analytics 2.0, Inc.***

---